IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03035-STV

DANIEL DOWGIALLO,

    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,

    Defendant.

_____

# ORDER
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment (the "Motion"). [#47] The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment.[1] [#18, 24] The Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court **DENIES** the Motion.

---

[1] This case was originally referred to Magistrate Judge Kathleen M. Tafoya. [#24] Upon Magistrate Judge Tafoya's retirement, the case was reassigned to the undersigned. [#54] "[C]onsent . . . under D.C.COLO.LCivR 72.2, . . . is not a consent to any particular magistrate judge, only a consent to have a magistrate judge decide the case." *Janny v. Palmer*, No. 17-CV-02194-KLM, 2018 WL 8188216, at *2 (D. Colo. Dec. 10, 2018), *report and recommendation adopted*, 2019 WL 1873364 (D. Colo. Apr. 25, 2019).

I.     **UNDISPUTED FACTS**[2]

This case arises out of Plaintiff's contention that Defendant failed to pay benefits owed to Plaintiff pursuant to underinsured motorist ("UIM") coverage under an insurance policy issued by Defendant. [*See generally* #34] On November 3, 2018, Plaintiff was involved in an automobile accident in which the vehicle he was driving collided with a vehicle driven by Michael Lantier. [#47-1] Mr. Lantier was cited with a traffic violation in connection with the accident. [*Id.* at 1] At the time of the accident, Mr. Lantier had insurance coverage pursuant to an insurance policy with USAA and Plaintiff was insured pursuant to a commercial policy with Defendant that included the "Colorado Underinsured Motorists Coverage—Bodily Injury" endorsement. [*Id.*; #47-2 at 26] Pursuant to the UIM endorsement:

> [Defendant] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

[#47-2 at 26]

On or about December 4, 2018, Plaintiff saw his primary care provider with complaints of acute lower back pain and muscle spasms. [#47-7 at 3; #47-9 at 1] Plaintiff was evaluated by a chiropractor at Alliance Health Partners ("Alliance") on or about

---

[2] Consistent with D.C.COLO.LCivR 56.1(1), the Motion includes a statement of material facts, which sets forth Defendant's proposed undisputed facts in sequentially numbered paragraphs. [#47 at 4-8] Unfortunately, Plaintiff fails to specifically respond to these statements of material facts in his response to the Motion. [#48] Upon review of the briefing, it appears that the facts are largely undisputed and neither party has raised any objection with regard to the evidence submitted by the parties with their briefing. The Court thus assumes that the facts set forth in Defendant's Motion are undisputed unless explicitly disputed in Plaintiff's response to the Motion and cites to the evidence submitted by the parties with their briefing to support the facts set forth herein.

December 6, 2018.  [*Id.*]  Alliance created a written report, entitled Initial Evaluation, based upon Plaintiff's evaluation on December 6, 2018.  [#47-9]  The Initial Evaluation indicated that Plaintiff was "currently working full-time without restrictions as grounds specialist."  [*Id.* at 1]  The Initial Evaluation noted that Plaintiff appeared "in some pain" with "related distress" and diagnosed Plaintiff with "[c]ervical, thoracic, lumbar, and sacroiliac sprain/stain; muscle spasms resulting in myofascial pain syndrome; segmental and somatic dysfunction throughout the cervical, thoracic, lumbar, and SI regions; positional sleep disturbance; lumbar radiculopathy . . .; sacroiliitis."  [*Id.* at 1, 4]

Defendant's claim file notes indicate that Plaintiff provided Defendant notice of the accident on January 9, 2019.  [#47-3 at 24]  On January 12, 2019, Plaintiff spoke with an adjuster for Defendant and represented that he had filed a claim with USAA and received payment for the damage to his vehicle.  [*Id.* at 23]  Plaintiff indicated that he did not want to use collision coverage but was instead filing a claim only for medical payments.  [*Id.*]

On April 26, 2019, an attorney sent a demand letter to USAA on behalf of Plaintiff seeking to settle his claim for $120,000.  [#47-4]  In that letter, Plaintiff described the lost wages component of his claim as follows:

> [Plaintiff] is self-employed as a landscaper and lost five jobs due to the loss of his truck.  Those estimates . . . total $3,550.
>
> As part of his landscaping business, [Plaintiff] also performed snow removal.  Since he had to purchase a new truck, he could not afford a new plow as well, therefore, he had to subcontract out the snow removal part of his business.  From 11-12-18 to 3-18-19, this amounted to $6562.50.
>
> Therefore, [Plaintiff's] total wage loss is $10,112.50.

[*Id.* at 6]  On May 6, 2019, Plaintiff's attorney requested permission from Defendant to settle Plaintiff's claim with USAA for the policy limits of $25,000.  [#47-5]  On May 29, 2019, an adjuster for Defendant, Emily Williams, requested an affidavit confirming that no

3

additional coverage was available to Mr. Lantier. [#47-3 at 17] On July 8, 2019, Ms. Williams provided consent on behalf of Defendant for Plaintiff to settle with USAA for the policy limits. [#47-6] In a letter to Ms. Williams dated July 9, 2019, Plaintiff's attorney made a demand for UIM benefits. [#47-7] The letter described the lost wages portion of Plaintiff's claim using the exact same language quoted above from the USAA demand letter. [*Id.* at 6-7] Defendant's claim notes indicate that the demand letter was received by Defendant on July 17, 2019. [#47-3 at 13]

On August 12, 2019, Ms. Williams entered a claim note indicating that Plaintiff's request for lost wages related to the loss of his vehicle and thus would fall under UIM coverage for property damage, but Plaintiff's policy did not appear to include coverage for property damage. [*Id.* at 6] Ms. Williams entered an evaluation of Plaintiff's UIM claim on that same date, in which she again indicated that the lost wages were not covered since they related to property damage. [*Id.* at 4-6] Ms. Williams concluded the evaluation by stating: "Appears [Plaintiff] has been made whole with the $25k collected to date. However, requesting up to $5,000 in order to settle this case." [*Id.* at 5] According to the claim notes, an Evaluation Consultant review was performed on August 14, 2019 and agreed that it "[a]ppear[ed] insured ha[d] been fully compensated based upon the info[rmation] [Defendant] ha[d] to date," but "[d]ue to venue and current trends in th[e] venue," the reviewer "agree[d] with making a compromise offer up . . . to $2500." [*Id.* at 3]

On August 15, 2019, Ms. Williams sent Plaintiff's attorney a letter in response to Plaintiff's UIM demand. [#47-10] Ms. Williams stated that, "[b]ased on the information received to date, the current claim value f[ell] within the combined funds already received

4

by [Plaintiff] in the amount of $25,000 . . ., so no [UIM] exposure [was] seen." [*Id.*] "However, in an attempt to amicably resolve th[e] matter, . . . [Ms. Williams] offer[ed] $1,000 to settle th[e] [UIM] claim based on the information received to date." [*Id.*] Ms. Williams closed by stating: "[u]pon confirmation that this is acceptable to your client, I will forward a release and check to your attention." [*Id.*]

On that same date, Ms. Williams also had a telephone call with Plaintiff's attorney. [#47-3 at 3] According to the claim notes, Ms. Williams told Plaintiff's attorney that she "just [didn't] see the value" in the claim, because there had been a "month gap in treatment" ending in a steroid injection, Plaintiff "didn't miss work," and "didn't have complaints initially." [*Id.*] Ms. Williams noted that she had told Plaintiff's attorney that she could "extend $1k in a good faith effort to settle th[e] case." [*Id.*] The claim note concludes by stating "[i]ssued $1,000 Fisher payment." [*Id.*]

On September 12, 2019, Ms. Williams called and spoke to someone in Plaintiff's attorney's office who told her that she was unaware of the value Plaintiff sought for the claim but that she was aware that Plaintiff's attorney had drafted a complaint. [*Id.*; #47-8 at 6 (63:10-13)] On September 16, 2019, Plaintiff's attorney called to speak with Ms. Williams about the claim. [#47-3 at 2] Plaintiff's attorney stated that they were going to file a lawsuit and that Plaintiff was seeking $10,000 to resolve the UIM claim. [*Id.*] Ms. Williams told Plaintiff's attorney that she could not consider the approximately $10,000 in lost wages as part of the bodily injury UIM claim, because they were all related to property damage losses and he may still be able to collect for property damage under the USAA policy. [*Id.*] According to the claim notes, in response, Plaintiff's attorney stated, "that's ridiculous because [Plaintiff] couldn't work because he was not as efficient as before,

5

causing him to lose jobs." [*Id.*]  Ms. Williams stated that the demand letter was very clear and stated "something different"—*i.e.*, that the lost wages resulted from the loss of Plaintiff's truck and his inability to purchase a snow plow.  [*Id.*]  When Ms. Williams asked whether the claim would be resolved if USAA covered the lost wages, Plaintiff's attorney responded:  "absolutely not" because Plaintiff "was injured and has lost wage[s]" and Defendant "should cover[ ] it under the [bodily injury policy]."[3]  [*Id.*]  Ms. Williams stated that she could "extend the top value of $2500, but [she didn't] have additional authority." [*Id.*]  After the call, Ms. Williams called USAA and confirmed that "if [USAA] received lost wage support for [the] truck being down, they would pay under [property damage]."  [*Id.*]  Ms. Williams also sent Plaintiff's attorney a letter following the call, in which she stated that she was "writing to confirm the claim values . . . in order to settle [Plaintiff's] claim" and that "[t]he valu[ation] [was] based on the written documentation [Defendant] ha[d] received of [Plaintiff's] injury claim." [#48-3]  Ms. Williams then stated that the "[v]aluation for [Plaintiff] is $2,500" and that she had "issued the balance of $1,500 toward [Plaintiff's attorney's] office."  [*Id.*]  On that same date, Plaintiff filed the instant lawsuit in the District Court, El Paso County, State of Colorado [#6].

On September 24, 2019, Ms. Williams sent Plaintiff's attorney a letter "to update [them] on the status of the claim.  [#47-11]  Ms. Williams stated that Defendant had

---

[3] It appears that Defendant did subsequently submit a claim to USAA for the loss of work he purportedly sustained as a result of the damage to his truck and his inability to obtain a snow plow.  [*See* #47-12]  On May 12, 2020, USAA sent Plaintiff's attorney a letter stating that USAA had "reviewed [Plaintiff's] property damage claim" and asked Plaintiff to answer questions regarding the jobs he purportedly lost due to the damage to his truck and his inability to complete the snow removal jobs.  [*Id.*]  The Motion, however, does not argue that Plaintiff has been fully compensated for the lost wages such that no UIM coverage is available.

6

"extended [its] top value of $2,500 and [Plaintiff] countered with $10,000" but Defendant "believe[d] that [Plaintiff] ha[d] been fully compensated." [#47-11] Ms. Williams again stated that the demand letter "indicate[d] that [Plaintiff] lost wages due to the loss of his truck and couldn't replace his snow plow, thus losing jobs" and that Defendant's "position at th[at] time [wa]s that the $10,112.50 claim for lost wages should be considered under the [property damage] limits of the tort carrier policy." [*Id.*] Ms. Williams further stated that she "do[es] not have record[s] from any doctors supporting that [Plaintiff] lost time from work due to his injuries." [*Id.*] Ms. Williams requested that "[i]f any of the above changes, or if new information is provided," to please let her know. [*Id.*]

On October 23, 2019, Defendant removed the lawsuit to the United States District Court for the District of Colorado. [#1] On April 14, 2020, Magistrate Judge Tafoya issued an order denying Plaintiff's motion to remand and finding that the Court had diversity jurisdiction over the lawsuit. [#31] On April 27, 2020, Plaintiff filed the Amended Complaint—the operative complaint in this matter. [#34] The Amended Complaint asserts claims for: (1) UIM Motorist Benefits, (2) Breach of Contract, and (3) Unreasonable Delay and Denial of Insurance Benefits Pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116 (the "Statutory Bad Faith Claim"). [*Id.*]

On March 12, 2021, Defendant filed the instant Motion seeking summary judgment on Plaintiff's Statutory Bad Faith Claim. [#47] On April 2, 2021, Plaintiff filed his response in opposition to the Motion (the "Response") [#48], and Defendant then filed a reply in support of the Motion [#49].[4]

---

[4] On November 22, 2021, Defendant filed a Notice of Supplemental Authority alerting the Court to a decision by Judge Raymond P. Moore in this District granting summary judgment to an insurer on an insured's claims for statutory and common law bad faith.

7

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998). If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial." *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury. *See Anderson*, 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture,

---

[#52 (citing *Albrandt v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-01926-RM-NYW, 2021 WL 5140283, at *1 (D. Colo. Nov. 4, 2021)]

or surmise.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party."  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

### III.  ANALYSIS

Through the Motion, Defendant seeks summary judgment only on Plaintiff's Statutory Bad Faith Claim.[5]  [#47]  Pursuant to Colorado Revised Statutes § 10-3-1115, "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."[6]  The statute further provides that "an insurer's delay or denial was unreasonable if the insurer

---

[5] Plaintiff has not asserted a claim under the common law for bad faith breach of contract. [#34]  "[P]roof of a statutory claim differs from proof of a common law claim."  *Schultz v. Geico Cas. Co.*, 429 P.3d 844, 848 (Colo. 2018).  "[W]hereas a common law claim requires proof that the insurer acted unreasonably and that it knew or recklessly disregarded the fact that its conduct was unreasonable, the only element at issue in the statutory claim is whether an insurer denied benefits without a reasonable basis."  *Id.* (quotation omitted).  Nonetheless, "common law bad faith precedent is helpful, but not dispositive, when interpreting a statutory [bad faith claim]."  *Vaccaro v. Am. Fam. Ins. Grp.*, 275 P.3d 750, 758 (Colo. App. 2012).

[6] Pursuant to Colorado Revised Statutes § 10-3-1116, "[a] first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit."

9

delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." "[T]he reasonableness of an insurer's decision to deny or delay benefits to its insured must be evaluated based on the information that was before the insurer at the time it made its coverage decision." *Schultz v. Geico Cas. Co.*, 429 P.3d 844, 848-49 (Colo. 2018). "Courts evaluate statutory bad faith claims objectively based on industry standards." *Roberts v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-00319-NYW, 2019 WL 3003642, at *4 (D. Colo. July 10, 2019) (citing *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 919 (10th Cir. 2015)). Thus, in determining whether an insurer's conduct was unreasonable, "the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp.3d 998, 1003 (D. Colo. 2020). "Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists." *Id.* at 1003. "However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law." *Id.*

In the Motion, Defendants contend that the Amended Complaint "presents [three] identifiable assertions of unreasonable conduct by [Defendant]": (1) "that Ms. Williams withheld her evaluation of $2,500, instead offering and paying a lesser amount before ultimately offering and paying the $2,500"; (2) that Defendant "attempted to force a settlement before it would pay benefits [Plaintiff] was owed"; and (3) "that Ms. Williams'[s] evaluation is unreasonably low because she did not consider all of Plaintiff's damages." [#47 at 10] In the Response, Plaintiff argues that "[t]he key issue in this case is whether [Defendant] acted unreasonably in both delaying and denying payment of [Plaintiff's]

10

claim for lost wages under his [UIM] policy" but also contends that "[e]vidence shows that Ms. Williams withheld payment for a portion of the total evaluation for medicals without a reasonable basis, and . . . also supports a reasonable inference that the withholding of payment was done to induce settlement."  [#48 at 3, 14]  The Court thus understands Plaintiff's Statutory Bad Faith Claim to be premised upon: (1) Defendant's conduct in denying Plaintiff's claim to UIM benefits premised upon his purported lost wages, and (2) Ms. Williams's alleged withholding of a portion of Defendant's total evaluation for the medical portion of Plaintiff's UIM claim.  The Court evaluates each in turn.

### A. Defendant's Conduct in Denying the Claim for Lost Wages

Defendant contends that Plaintiff cannot support a claim for statutory bad faith based upon its denial of Plaintiff's claim for lost damages, because Ms. Williams had a reasonable basis for her decision that the lost wages related to property damage and not bodily injury, including an express representation made by Plaintiff's attorney in the demand letter.[7]  [#47 at 4, 13-16]  More specifically, Defendant argues that "[e]ven if Plaintiff disagrees with Ms. Williams'[s] evaluation of his bodily injury claim—which is his right under the Policy—a mere disagreement as to valuation of debatable damages is insufficient to demonstrate unreasonableness."  [*Id.* at 14]

Although Defendant seems to argue that the fact that the lost income damages claim was "fairly debatable" is conclusive of the reasonableness inquiry,[8] "[f]air

---

[7] Plaintiff does not dispute that Plaintiff's UIM coverage "unambiguously excludes [from] coverage damages resulting from loss of property."  [#48 at 8]

[8] For example, Defendant argues that "[i]f a value dispute alone w[as] sufficient to support a claim for a[n] unreasonable delay, longstanding Colorado law affording an insurer the ability to reasonably challenge claims that are fairly debatable and to resist false or unfounded claims would be rendered moot, as an insurer would be forced to pay *any* demand made by an insured or risk liability for attorney fees and double damages."  [#47

debatability . . . is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case." *Schultz*, 429 P.3d at 848 (quotation omitted). Instead, "[i]f a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable,'" that merely "weighs against a finding that the insurer acted unreasonably." *Id.* (quotation omitted). Moreover, "in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000)). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably." *Id.* at 1219 (quoting *Zilisch*, 995 P.2d at 280).

Here, Plaintiff contends that Ms. Williams's "failure was her denial to make payment on a claim that she would have understood as injury-related damages covered under the [UIM] policy had she made an attempt to conduct a reasonable investigation to inform herself about the claim." [#48 at 8; *see also id.* at 9 ("Rather than engaging in [Defendant's] fairly debatable argument, Plaintiff will point to evidence in the record that shows that Ms. Williams failed to conduct a reasonable investigation."). More specifically, Plaintiff contends that it was unreasonable for Ms. Williams to rely upon the statement in

---

at 15 (emphasis added)]  As the Colorado Court of Appeals noted in *Vaccaro*, however, the inverse is also true.  275 P.3d at 760.  "[E]very lawsuit over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy" and thus "[i]f every such claim is 'fairly debatable' as a matter of law, the exception would swallow the rule, and insurers could refuse to pay any claim where money is at issue."  *Id.*

12

the July 9, 2019 demand letter that the lost wages were caused by property damage, because Plaintiff's attorney subsequently notified Ms. Williams during a telephone conversation on September 16, 2019 that "[Plaintiff] couldn't work because he was not as efficient as before, causing him to lose jobs" and Ms. Williams made no effort to investigate that contention. [*Id.* at 7-9] Plaintiff further contends that "[r]egardless of Plaintiff's demand letter, [Ms. Williams had] a duty to investigate whether any lost wages were due to bodily injury upon receiving th[e] information from Plaintiff's counsel" that the lost wages resulted from a lack of efficiency. [#48 at 10]

As noted above, courts evaluate the reasonableness of an insurer's conduct "objectively based on industry standards." *Roberts*, 2019 WL 3003642, at *4. The Colorado Supreme Court has held that Colorado's Unfair Competition—Deceptive Trade Practices Act (the "DTPA"), Colorado Revised Statutes § 10-3-1104, "is 'valid, but not conclusive, evidence of industry standards.'" *Thompson*, 457 F. Supp.3d at 1004 (quoting *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004)). Pursuant to the DTPA, it is an unfair claim settlement practice for an insurer to willfully or as a business practice "[f]ail[ ] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" or "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information." Colo. Rev. Stat. § 10-3-1104(h)(III), (IV). Thus, "bad faith is not limited to a decision to deny a claim; rather, bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts." *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007). Plaintiff contends that Defendant acted unreasonably in violation of DTPA, because Ms. Williams did not conduct any investigation at all of Plaintiff's claim that the lost wages resulted, at least in

part, from his loss of efficiency—*i.e.*, bodily injury—following the accident. In support, Plaintiff points to Ms. Williams's deposition testimony, in which she acknowledged that, in response to Plaintiff's attorney's contention that the lost wages resulted at least in part from Plaintiff's loss of efficiency following the accident, that she did not request an independent medical examination or contact any of Plaintiff's medical providers. [#48 at 12 (citing #47-8 at 7 (68:10-15))] Instead, Ms. Williams testified that "if [Plaintiff's counsel] had provided [her] proof, [she] could have considered and looked at it to see what came from it." [#47-8 at 7 (67:8-17)]

Strangely, but perhaps tellingly, Defendant does not directly address in either the Motion or the reply in support of the Motion, Plaintiff's argument that Ms. Williams failed to investigate whether Plaintiff's lost wages resulted, at least in part, from Plaintiff's loss of efficiency after the accident. [*See* #47, 49] Indeed, the word "efficiency" is not referenced by Defendant in either the Motion or the reply in support of the Motion. [*Id.*] In the Motion, Defendant contends generally that "[e]ven if Plaintiff now claims that his injuries would have prevented him from working even if he had his vehicle, that does not alter the information and representations provided to Ms. Williams which is the only relevant information in assessing whether she acted reasonably." [#47 at 19] The record evidence, however, supports Plaintiff's contention that Plaintiff's attorney notified Ms. Williams on September 16, 2019—during her evaluation of Plaintiff's UIM claim—that Plaintiff's lost wages claim was also based upon his loss of efficiency (*i.e.*, bodily injury) following the accident. [*See* #47-3 at 2] Indeed, Ms. Williams expressly testified in her deposition in this case that she recalled Plaintiff's attorney telling her during her evaluation

14

of the claim that the lost wages were "related to [Plaintiff's] injuries, in part, and related to the lack of a vehicle, in part."  [#47-8 at 7 (66:16-67:12)]

In its reply, Defendant does not specifically challenge Plaintiff's contention that Ms. Williams failed to conduct any investigation into whether the lost wages may have resulted from Plaintiff's loss of efficiency following the accident.  [#49]  Instead, Defendant devotes only two sentences to Plaintiff's arguments regarding the insufficiency of Ms. Williams's investigation.  [*Id.* at 6]  First, Defendant contends, without citation to any authority, that although "Plaintiff states that an insurer can act unreasonably in failing to pay claims 'without conducting a reasonable investigation based upon all available information,' he does not recognize that the reasonableness of an investigation will still require proof of what is reasonable in the industry."  [*Id.* (quoting #48 at 5)]  Defendant fails to explain why Plaintiff's citation to DTPA's investigation requirements and evidence that Ms. Williams failed to conduct *any* investigation *at all* are insufficient.  To the extent Defendant suggests that Plaintiff must submit expert testimony in support of his bad faith claim, the Court disagrees.  "The reasonableness of an insurer's investigation into the underlying events of an automobile insurance claim is not a technical question and does not require additional professional training beyond the knowledge of the average juror."  *Allen*, 102 P.3d at 345; *see also Carroll v. Safeco Ins. Co. of Am.*, No. 20-CV-00219-REB-NYW, 2020 WL 7421388, at *4 (D. Colo. Oct. 19, 2020) ("Where the insured's statutory bad faith claim rests on the insurer's alleged failure to properly investigate . . ., expert testimony is likely unnecessary), *report and recommendation adopted*, 2021 WL 694798 (D. Colo. Jan. 14, 2021).  Second, Defendant contends that "Plaintiff ignores that the [DTPA] only requires a 'reasonable investigation' . . . not . . . a perfect investigation."  [#49 at 6]  As

15

noted above, however, Plaintiff argues that Ms. Williams failed to conduct *any* investigation—not merely an imperfect investigation—into Plaintiff's contention that the lost wages resulted from his injuries and offers evidence to support that finding. In particular, Plaintiff cites evidence that Ms. Williams failed to speak to Plaintiff's medical providers or to request that Plaintiff submit to an independent medical examination. "The duty to conduct a reasonable investigation includes 'a duty to promptly and effectively communicate with anyone [the insurer is] reasonably aware ha[s] . . . information pertaining to the handling of [the] plaintiff['s] claim.'" *Thompson*, 457 F. Supp.3d at 1004 (quoting *Dunn v. Am. Family Ins.*, 251 P.3d 1232, 1238 (Colo. App. 2010)). "Implicit in the duty to investigate is the requirement that the investigation be adequate and fair," which requires that the insurer "diligently search for evidence which supports [the] insured's claim and not merely seek evidence upholding its own interests." *Id.* (quotation omitted). Defendant has offered no evidence or argument to refute Plaintiff's contention or supporting evidence.

The Court finds that "a reasonable jury could conclude that [D]efendant's failure to obtain additional relevant information"—such as an independent medical examination or additional information from Plaintiff's medical providers—after Plaintiff's attorney informed Ms. Williams that Plaintiff's lost wages were, at least in part, caused by his bodily injuries, "did not constitute an adequate and fair investigation based on all available information." *Thompson*, 457 F. Supp.3d at 1005. Accordingly, the Court **DENIES** the Motion to the

extent it seeks summary judgment on Plaintiff's Statutory Bad Faith Claim premised upon Ms. Williams's handling of Plaintiff's claim for lost wages.

### B.    Ms. Williams's Alleged Withholding of Payment for Medicals

Plaintiff's Statutory Bad Faith Claim also is based upon Ms. Williams allegedly "with[holding] payment for a portion of the total evaluation for medicals without a reasonable basis, and . . . to induce settlement." [#48 at 14]  Defendant contends that Ms. Williams consistently evaluated the value of Plaintiff's claim to be "less than the tortfeasor's liability limits" and thus Ms. Williams did not withhold any part of her evaluation of the value of Plaintiff's claim but instead made settlement offers to try to reach a compromise resolution of Plaintiff's claim.  [#47 at 11]   Under Colorado law, "[c]ompromise or settlement offers are not admissions of liability" and the Court may not "infer that settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith."  *Signature Dev. Companies, Inc. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223–24 (10th Cir. 2000) (quotation omitted).  As a result, in order to prove that Defendant improperly withheld payments, Plaintiff must offer sufficient evidence to support a finding that the $2,500 in payments made to Plaintiff by Defendant constituted payments based upon the value of Plaintiff's claim as distinguished from compromise offers made in an attempt to settle Plaintiff's claim.

In its reply in support of the Motion, Defendant contends that the "facts establish that the evaluation of Plaintiff's bodily injury claim was less than the $25,000 Plaintiff recovered from the tortfeasor, but in an act of good faith and to try and reach resolution, Ms. Williams requested authority to make a compromise offer of settlement" and that

17

Plaintiff failed to dispute those facts. [#49 at 7] Although the Court agrees that there is significant evidence in the record that would support a finding that Ms. Williams valued Plaintiff's claim at less than the $25,000 he had already received from USAA and thus issued the $1,000 and $1,500 payments solely in an attempt to settle the claim, Plaintiff clearly disputes that conclusion and has offered evidence to support his position. [#48 at 14-16]

First, Plaintiff notes that, at the time Ms. Williams issued the $1,000 payment, she described the payment in her claim notes as a "Fisher payment," which "indicate[s] that it was an undisputed covered benefit under the policy paid while other parts of the UIM claim are subject to dispute." [*Id.* at 15 (citing #47-3 at 3)] The Court agrees. In *State Farm Mut. Auto. Ins. Co. v. Fisher*, the Colorado Supreme Court held that "insurers have a duty not to unreasonably delay or deny payment of covered benefits, even though other components of an insured's claim may still be reasonably in dispute." 418 P.3d 501, 502 (Colo. 2018). Drawing all reasonable inferences in favor of Plaintiff, as the Court must, Ms. Williams's characterization of the $1,000 payment as a "Fisher payment" in internal documents thus may indicate that she considered the payment a "covered benefit" rather than a compromise offer. Defendant contends that Plaintiff's reliance on *Fisher* is misplaced, because "[t]he Court of Appeals in *Fisher* actually affirmed that settlement offers are not admissions." [#49 at 8] The Court finds this argument inapposite and unpersuasive, because Ms. Williams did not merely extend a settlement *offer* but rather issued a payment—even though Plaintiff had not accepted her offer—and described that payment as a "Fisher payment."

18

Second, Plaintiff notes that, when Ms. Williams issued the additional $1,500 payment, it was accompanied by a letter that stated that the "[v]aluation for [Plaintiff's claim] is $2,500" and that Defendant thus was "issu[ing] the balance of $1,500." [#48 at 14 (quoting #48-3)]  Ms. Williams's letter further states that "[t]he value is based on the written documentation [Defendant] h[as] received of [Plaintiff's] injury claim." [#48-3]  The Court thus finds that Ms. Williams's letter reasonably may be viewed by a jury as supporting a finding that Ms. Williams "valued" Plaintiff's claim at $2,500 "based on the written documentation" Plaintiff had provided in support of his claim.  Although Defendant characterizes the $1,000 and $1,500 payments as "settlement offers," Defendant provides no evidence or argument to explain why the payments were actually issued given that Plaintiff did not accept the "offers."  [#49 at 7-9]

Third, although Plaintiff acknowledges that Ms. Williams explained at her deposition that she valued Plaintiff's claim to be worth less than the $25,000 he had received from USAA throughout her evaluation of the claim and that Defendant sometimes used the terms "offer" and "value" interchangeably, Plaintiff contends that "[t]he truth of this [testimony] is an issue of witness credibility" that must be resolved by the jury at trial.  [#48 at 14-15 (citing #47-8 at 5-6 (61:3-63:9))]  Given the conflicting statements included in the documentary evidence surrounding the issuance of the payments discussed above, the Court agrees.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Anderson*, 477 U.S. at 255.

19

Accordingly, the Court finds that there are issues of disputed fact regarding whether the payments issued by Ms. Williams merely constituted efforts to settle the claim in spite of her determination that the claim had no value or whether those payments actually were made based upon Ms. Williams's evaluation of the value of Plaintiff's claim. The Court thus DENIES the Motion to the extent it seeks summary judgment on Plaintiff's Statutory Bad Faith Claim premised upon Ms. Williams withholding the payment of benefits owed under the policy.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment [#47] is **DENIED**.  A Final Pretrial Conference is set for **April 12, 2022 at 10:00 am** before Magistrate Judge Scott T. Varholak, in Courtroom A-402, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  The parties shall submit a joint proposed pretrial order on or before **April 5, 2022.**

DATED:  March 11, 2022                                         BY THE COURT:

                                                                                    s/Scott T. Varholak
                                                                                    United States Magistrate Judge